## ESPINOZA v THOMAS

Docket No. 119658. Submitted November 19, 1990, at Lansing. Decided May 6, 1991, at 10:40 A.M.

Steven L. Espinoza brought an action in the Genesee Circuit Court against John Thomas, James Delaney, and Anthony Wittbrodt, individually and as partners of the law firm of Thomas, Delaney & Wittbrodt, alleging legal malpractice as a result of the defendants' failure to file the plaintiff's action for assault and battery against third parties before the period of limitation applicable to that claim expired. The court, Philip C. Elliott, J., granted summary disposition for the defendants, ruling that the plaintiff had failed to state a claim of legal malpractice because he could not show any damages resulting from the defendants' conduct for which the plaintiff had not already been compensated. That determination was made on the bases that the plaintiff, with new counsel, had proceeded against the defendants in the underlying action on theories of intentional infliction of emotional distress, aiding and abetting assault, negligence, and nuisance; that these claims had been mediated; and that all the parties to the underlying action had accepted the mediation award of $16,000 for the plaintiff. The plaintiff appealed.

The Court of Appeals *held:*

Summary disposition was inappropriate. The pleadings and the evidence were sufficient to raise an inference that the low mediation award and the plaintiff's acceptance of the award were caused by the defendants' malpractice.

1. The court erred in finding that the mediation award had compensated the plaintiff for the full value of his injury because the total extent of the plaintiff's damages was only one of the many factors properly considered by the mediation panel. Because some of the factors properly considered by mediators are not properly considered by a trial court, the acceptance of a

REFERENCES

Am Jur 2d, Arbitration and Award §§ 146 et seq.; Attorneys at Law §§ 201, 206.

Legal malpractice in settling or failing to settle client's case. 87 ALR3d 168.

mediation award is not analogous to a judgment entered after a trial and a verdict by a judge or jury.

2. The plaintiff lost a viable cause of action for assault and battery as a result of the defendants' negligence. Given the unsettled state of the law regarding whether a cause of action for intentional infliction of emotional distress is valid in this state, the trial court erred in finding that the lost claim for assault and battery was no more, and probably less, viable than the plaintiff's claim for intentional infliction of emotional distress and that, therefore, the plaintiff would not have been able to recover a greater amount had he been able to successfully pursue the assault and battery claim. The plaintiff's case against the underlying defendants was considerably weaker without the assault and battery claim, and it is likely that this consideration influenced the mediators.

3. The evidence presented by the plaintiff created a reasonable inference that his actual damages were far greater than the amount of the mediation award and established a question of fact concerning whether any negligence on the defendants' part forced the plaintiff to accept a mediation award that was much lower than it would have been had his claim for assault and battery been properly preserved. The defendants may be found liable for causing the plaintiff to settle for less than a properly represented client would have accepted.

Reversed and remanded.

1. PRETRIAL PROCEDURE — MEDIATION — JUDGMENTS.

The acceptance of a mediation award is not analogous to a judgment entered after a trial and a verdict by a judge or jury, but is more like a consent judgment reached after negotiation and settlement; because the plaintiff's damages are but one of the factors properly considered by mediators in determining an award and some factors properly considered by mediators are not properly considered by a trier of fact, a mediation panel's evaluation of a plaintiff's claim may not constitute a determination of the full extent of the plaintiff's damages (MCR 2.403[J][3]; MRE 408, 409, 411).

2. ATTORNEY AND CLIENT — MALPRACTICE — SETTLEMENTS.

An attorney may be held liable for causing a client to settle for less than a properly represented client would have accepted where the settlement is compelled by the mistakes of the attorney.

*Michael J. Mangapora, P.C.* (by *Rex A. Ziebarth*), for the plaintiff.

*Plunkett & Cooney, P.C.* (by *Robert G. Kamenec*), for the defendants.

Before: MACKENZIE, P.J., and MCDONALD and MURPHY, JJ.

MURPHY, J. Plaintiff appeals as of right from the trial court's grant of defendants' motion for summary disposition pursuant to MCR 2.116(C)(8), failure to state a claim upon which relief can be granted. The trial court ruled that plaintiff had failed to state a claim of legal malpractice against defendants because plaintiff could not show any damages resulting from defendants' conduct for which plaintiff had not already been compensated. The trial court reasoned that because plaintiff had accepted a mediation award in the underlying litigation, which was based on claims for the same damages plaintiff would have sought under an assault and battery theory if defendants had commenced that action before the period of limitation for assault and battery had expired, plaintiff had been fully compensated and had suffered no damages through defendants' malpractice. We reverse.

On September 21, 1984, plaintiff, a salaried employee of General Motors Corporation, was returning to work after his lunch hour. As plaintiff attempted to enter the plant gate, UAW members Hawkins, an elected district committeeman of UAW Local 598, and Miller, along with several other striking GM employees who were UAW members, attacked plaintiff's vehicle and blocked its path through the gate. The strikers encircled plaintiff's vehicle and repeatedly pushed, rocked, and struck the vehicle with their fists and picket signs, inflicting extensive physical damage to the automobile. Furthermore, during the entire incident, plaintiff's vehicle remained partially in the

northbound lane of the public road. Because plaintiff was unable to move his vehicle, he was in danger of being hit by vehicles traveling in either direction on the road.

As a result of the strikers' attack, plaintiff suffered a severe aggravation of a preexisting mental condition, known as bipolar disorder, which has resulted in physical and mental injuries, including severe panic attacks. Eventually, this injury caused plaintiff to be placed on permanent disability and retirement from his employment. Both plaintiff and his treating physician directly attribute plaintiff's injuries to the strikers' attack at the GM plant.

Plaintiff retained defendant Delaney and his law firm to prosecute his claims against the strikers and UAW Local 598. However, defendants failed to commence an action on plaintiff's behalf before September 21, 1986, when the statutory limitation period applicable to plaintiff's claim against the strikers for assault and battery expired.

Plaintiff severed his relationship with defendants and hired another attorney, who commenced an action on plaintiff's behalf on December 21, 1986. As finally amended, plaintiff's complaint alleged counts of negligence and intentional infliction of emotional distress against Hawkins and Miller, a claim against UAW Local 598 for acquiescing in, directing, and wilfully aiding and abetting the actions of the strikers, and five counts of premises liability and nuisance against General Motors.

After completion of discovery, all of the defendants in the underlying cause of action moved for summary disposition. One of the grounds raised by Hawkins, Miller, and the UAW was that plaintiff's cause of action was actually a claim of assault and battery and, therefore, was barred because of the

statute of limitations. The trial court took the summary disposition motions under advisement and allowed the case to proceed to mediation as scheduled.

The mediation panel awarded plaintiff $500 each from defendants Miller and Hawkins, $5,000 from defendant General Motors, and $10,000 from defendant UAW Local 598. According to plaintiff, the mediation panel indicated that the nominal amount of the awards, in contrast to the damages alleged by plaintiff, was due to the panel's belief that the defendants would prevail on their respective motions for summary disposition. Plaintiff contends that the panel opined that his only viable cause of action was for intentional assault. In any event, all parties accepted the mediation award, and the case was dismissed with prejudice and without costs to any party.

Thereafter, plaintiff commenced the present malpractice action against defendant Delaney and his partners, both individually and as a law firm.

On appeal, plaintiff contends that because his acceptance of the mediation award in the underlying action is not a complete bar to his claim of malpractice against defendants, the trial court erred as a matter of law when it granted summary disposition in favor of defendants. We agree.

Initially, we note that defendants originally moved for summary disposition pursuant to MCR 2.116(C)(4), that the court lacked jurisdiction over defendants. At the motion hearing, the trial court allowed defendants to orally amend the basis for their motion to MCR 2.116(C)(8), failure to state a claim upon which relief can be granted. However, the court granted summary disposition on the basis of facts outside the pleadings, that is, the mediation award in plaintiff's favor in the underlying action. Therefore, we must review the court's

grant of summary disposition as if it were based on MCR 2.116(C)(10), that there was no genuine issue of material fact and defendants were entitled to judgment as a matter of law. See *Bourke v Warren,* 118 Mich App 694, 697; 325 NW2d 541 (1982).

There is no dispute that plaintiff retained defendants to represent him in the underlying case and that defendants failed to commence an action within the two-year statutory limitation period for assault and battery. It is also undisputed that plaintiff, with new counsel, proceeded against the defendants in the underlying action on theories of intentional infliction of emotional distress, aiding and abetting assault, negligence, and nuisance; that these claims were mediated; and that all parties accepted the mediators' award of $16,000 to plaintiff.

In order to establish a claim of malpractice against defendants in the present case, plaintiff had the burden to show: (1) the existence of the client-attorney relationship, (2) the acts allegedly constituting the negligence, (3) that the negligence was the proximate cause of the injury, and (4) the existence and the extent of the injury alleged. *Id.,* 698. In granting summary disposition in favor of defendants, the trial court held that, as a matter of law, plaintiff could not prove the fourth element of damages. The court reasoned that the mediation award had compensated plaintiff for the full value of his injury. Therefore, even assuming that defendants' conduct constituted malpractice, plaintiff had suffered no injury as a result of that conduct. The only issue before this Court is whether the trial court correctly determined the legal effect of plaintiff's acceptance of the mediation award. We conclude that it did not.

The trial court apparently accepted defendants'

argument that the mediation process which ended in an award to plaintiff constituted a final adjudication of plaintiff's claims arising out of the incident at GM which was analogous to a trial and jury verdict. As they do on appeal, defendants relied on *Bourke v Warren,* in which this Court held that the plaintiffs' claim of malpractice against their attorney in an underlying insurance claim was barred because the plaintiffs had no damages arising out of the attorney's alleged malpractice in the underlying action. The plaintiffs in *Bourke v Warren* had retained the defendant to represent them in pursuing a property damage claim against several defendants which arose from a truck accident in which the plaintiffs' building was damaged. Apparently, the defendant failed to commence an action against the insurer of the truck before the applicable statute of limitations expired. However, the plaintiffs, with other counsel, proceeded against their own insurer and, after a jury trial, obtained a verdict in the amount of $800, which was affirmed by this Court on appeal.[1] This Court concluded:

> Thus, even though an attorney is generally liable to his or her client for malpractice in connection with permitting a statutory time limit to bar the client's claim, the client must prove that the claim was, in fact, barred. See 90 ALR3d 293, §§ 1, 10[a], pp 295, 323. In this case, even assuming that the defendant's negligence prevented the plaintiffs from proceeding against two possible defendants in connection with the damage to their building, their claim was not lost because they were able to proceed against a third defendant from whom they recovered their loss. [*Id.,* 698-699.]

Using the same reasoning, defendants argue,

---

[1] See *Bourke v North River Ins Co,* 117 Mich App 461; 324 NW2d 52 (1982).

and the trial court agreed, that the purpose of mediation is to serve as a final adjudication of the plaintiff's damages and any resultant award constitutes a determination of the amount which fully compensates his loss. Defendants conclude that, even assuming that plaintiff lost his claim for assault and battery because of their malpractice, he was able to pursue the same elements of damage under different tort theories and, therefore, suffered no loss as a result of their conduct. We conclude that this reasoning is flawed for two reasons.

First, we agree that an accepted mediation evaluation serves as a final adjudication of the claims mediated that is binding on the parties to the mediation. However, we do not agree that acceptance of a mediation award is analogous to a judgment entered after a trial and verdict by a judge or jury. In truth, a mediation proceeding that ends with the parties' acceptance of the mediators' award is like a consent judgment reached after negotiation and settlement. *Reddam v Consumer Mortgage Corp,* 182 Mich App 754, 756-757; 452 NW2d 908 (1990); *Pelshaw v Barnett,* 170 Mich App 280, 286; 427 NW2d 616 (1988), modified on other grounds 431 Mich 910 (1988). Essentially, when a judge or jury adjudicates a claim, it only determines, on the basis of the evidence and the law before it, whether the defendant caused the plaintiff's injury and the amount of the plaintiff's damages for which the defendant is liable.

A consent judgment, however, differs substantially from the usual litigated judgment because it is primarily the act of the parties rather than the considered judgment of the court. *Ortiz v Travelers Ins Co,* 2 Mich App 548, 555; 140 NW2d 791 (1966). In nearly every settlement, the total extent of the plaintiff's damages is but one of the many

factors considered. *Id.,* 556. Rather, the parties will take into consideration such factors as "the forum of the action, the collectibility of the defendant, the appearance and demeanor of the potential witnesses and the skill of opposing counsel, to mention only a few of the pragmatic considerations which no one would suggest this Court should consider in determining what is full satisfaction for a particular injury." *Id.,* n 13.

Similarly, the mediation process is designed to give the mediation panel the flexibility to properly evaluate the nature, extent, and certainty of the plaintiff's claim and the likelihood of recovery from each defendant. *Langell v LaCrosse,* 149 Mich App 179, 181; 385 NW2d 643 (1986); *Dembinski v Miller,* 130 Mich App 822, 827; 345 NW2d 626 (1983). Thus, factors similar to those relevant in settlement negotiations would be considered by the mediators. In fact, MCR 2.403(J)(3) expressly authorizes the mediation panel to request information concerning applicable insurance policy limits and to inquire concerning settlement negotiations, both of which are matters never properly considered by a trier of fact. See MRE 408, 409, and 411. Thus, it is clearly incorrect to assume that a mediation panel's evaluation of a plaintiff's claim constitutes a determination of the full extent of the plaintiff's damages.

Second, we believe that the present case is readily distinguishable from *Bourke v Warren.* In that case, the plaintiffs' cause of action for the property damage to their building remained intact despite the alleged negligence of the defendant attorney in allowing the statutory limitation period to expire. Although the plaintiffs were precluded from obtaining recovery from the underlying defendant's insurer, they were able to fully litigate and recover on the same claim against their own insurer.

By contrast, in the present case, plaintiff contends that defendants' negligence caused the loss of his only viable cause of action and, thus, precluded plaintiff from obtaining full recovery for his damages. The trial court apparently believed that plaintiff's lost claim for assault and battery was no more, and probably less, viable than his claim for intentional infliction of emotional distress. On that basis, the court concluded that because the recoverable elements of damage were the same for either tort claim, plaintiff would not have recovered a greater amount even if he had been able to successfully pursue the assault and battery claim.

Contrary to the trial court's belief, we believe that plaintiff lost a viable cause of action for assault and battery. An assault is defined as any intentional unlawful offer of corporal injury to another person by force, or force unlawfully directed toward the person of another, under circumstances which create a well-founded apprehension of imminent contact, coupled with the apparent present ability to accomplish the contact. *Tinkler v Richter*, 295 Mich 396, 401; 295 NW 201 (1940); Prosser & Keeton, Torts (5th ed), § 9, p 39. A battery is the wilful and harmful or offensive touching of another person which results from an act intended to cause such a contact. *Tinkler, supra;* Prosser & Keeton, *supra.* Protection of the interest in freedom from unintentional and unpermitted contacts with the plaintiff's person extends to any part of his body or to anything which is attached to it and practically identified with it. *Id.* Thus, if all other requisites of a battery against the plaintiff are satisfied, contact with the car the plaintiff occupies is sufficient to establish a battery. *Id.,* 40. Thus, the attack on plaintiff's car by the striking workers could have established a claim for assault and battery.

Also significant to this case is the fact that our Supreme Court has never expressly recognized the validity of intentional infliction of emotional distress as a cause of action in this state. *Roberts v Auto-Owners Ins Co,* 422 Mich 594, 597; 374 NW2d 905 (1985). See also *Fulghum v United Parcel Service, Inc,* 424 Mich 89, 96-97; 378 NW2d 472 (1985). Moreover, the Supreme Court and this Court have been reluctant to find in any but the most egregious cases that conduct alleged as constituting intentional infliction of emotional distress rose to the level of "outrageous" behavior required to establish this tort. See *Roberts, supra,* 600-608, *Grochowalski v DAIIE,* 171 Mich App 771; 430 NW2d 822 (1988), and *Bonelli v Volkswagen of America, Inc,* 166 Mich App 483, 514-518; 421 NW2d 213 (1988), and cases cited therein. Given the unsettled state of the law in this area, plaintiff's case against the underlying defendants was considerably weaker without the assault and battery claim, and it seems likely that this consideration influenced the mediators. The extremely low award of $500 each against Hawkins and Miller, the only defendants in the underlying action who actively participated in the attack on plaintiff's car, supports this inference.

Furthermore, defendants presented no documentary evidence in support of their claim that plaintiff was not damaged by any alleged negligence in their handling of his case, relying solely on the existence of the mediation award and the resultant judgment in plaintiff's favor. Plaintiff, on the other hand, presented excerpts from the deposition testimony of the physician who treated him after the incident at GM and copies of his federal income tax return showing his gross income for the years 1983-1986. We reject defendants' argument that this evidence was insufficient to raise a question of

fact concerning damages because the doctor was unable to link the assault incident to plaintiff's mental condition and his resultant inability to continue in his employment at GM. Our review of the deposition excerpts shows that the doctor's testimony was not nearly as equivocal as defendants would have us believe. Dr. Kang expressly opined that the strikers' attack had aggravated plaintiff's preexisting mental condition and was the major, if not sole, cause of the symptoms plaintiff currently experienced, which the doctor likened to posttraumatic stress disorder, and his current disability. The doctor also testified that although plaintiff was experiencing panic attacks as recently as April 1988, these were occurring less frequently and his overall condition was improving. Nevertheless, Dr. Kang's prognosis for plaintiff's recovery and return to work was guarded. The documentation of plaintiff's past income showed that in the last year that he worked, 1986, he earned approximately $36,000. When the benefit of reasonable doubt is given to plaintiff, this evidence creates a reasonable inference that plaintiff's actual damages were far greater than the amount of the mediation award and establishes a question of fact concerning whether any negligence on defendants' part forced plaintiff to accept a mediation award that was much lower than it would have been had his claim for assault and battery been properly preserved.[2]

Our review of decisions from other jurisdictions supports our conclusion. On one hand, some courts have held that settlements in the underlying actions barred the plaintiffs' subsequent claims that

[2] We note that defendants would be entitled to set off the amount of the mediation award against any award for the same elements of damage that plaintiff may ultimately recover in this malpractice action. See *Stitt v Mahaney,* 403 Mich 711, 734-738; 272 NW2d 526 (1978).

their attorneys' negligence forced them to accept smaller awards than were potentially warranted. However, these courts have so held on the basis that there was never a viable cause of action in the underlying case, *Connaughton v Gertz*, 94 Ill App 3d 265; 49 Ill Dec 838; 418 NE2d 858 (1981), that the plaintiff's cause of action was preserved despite any attorney negligence because the same claim could be pursued in another jurisdiction where the statutory limitation period had not yet expired, *Golden v Duggins*, 374 So 2d 243 (Miss, 1979); *Mitchell v Transamerica Ins Co*, 551 SW2d 586 (Ky App, 1977), or because the settlement was within the range of the reasonable value of the plaintiff's claim, *Mitchell, supra*, 588. See also *Fishman v Brooks*, 396 Mass 643; 487 NE2d 1377 (1986) (expert evidence on the settlement value of the plaintiff's underlying claim was proper in subsequent malpractice action because the plaintiff had suffered no damages if the settlement was within the range that reasonably prepared counsel could have recommended).

On the other hand, other courts have held that the settlement of the underlying claim does not bar a plaintiff's malpractice claim against the attorney who handled the underlying action. In *King v Jones*, 258 Or 468; 483 P2d 815 (1971), the Supreme Court of Oregon held that judgment on the pleadings was inappropriate although the plaintiff had released the underlying tortfeasor and settled her claim. The plaintiff's complaint against her attorneys alleged that she lost her cause of action against the underlying tortfeasor because of the negligence of her attorneys in permitting the period of limitation to expire in the underlying action and that, as a result of such negligence, she was precluded from recovering a judgment for $27,873.97, rather than the $3,500

for which she settled. The court rejected the defendants' argument that the plaintiff's release of the underlying tortfeasor operated as a release of defendants because a release of one joint tortfeasor releases all, noting that the original defendant and the defendant attorneys were not joint tortfeasors. The plaintiff's cause of action against the original defendant was for personal injuries incurred when the defendant negligently struck the plaintiff with his automobile. The plaintiff's cause of action against the defendant attorneys was for malpractice which occurred later when the attorneys negligently failed to serve the original defendant before the expiration of the period of limitation. These were two separate and distinct acts which gave rise to two separate and distinct causes of action. *Id.,* 472. The plaintiff's subsequent release of the original defendant had no relationship to her cause of action against her attorneys. *Id.* See also *Titsworth v Mondo,* 95 Misc 2d 233; 407 NYS2d 793 (1978), modified on other grounds 73 AD2d 1049; 425 NYS2d 422 (1980). When a settlement is compelled by the mistakes of the plaintiff's attorney, the attorney may be held liable for causing the client to settle for less than a properly represented client would have accepted. *Fishman, supra,* 646; *Cohen v Lipsig,* 92 AD2d 536; 459 NYS2d 98 (1983).

In *Becker v Julien, Blitz & Schlesinger, PC,* 95 Misc 2d 64; 406 NYS2d 412 (1977), modified on other grounds 66 AD2d 674; 411 NYS2d 17 (1978), the court noted:

> In many, if not most instances involving an alleged malpractice by attorneys, the underlying litigation has been terminated—by allowing the Statute of Limitations to lapse, by suffering a default or dismissal and the like. Often it is the very fact of termination of the action which gives

rise to the claim for malpractice. Where the termination is by settlement rather than by a dismissal or adverse judgment, malpractice by the attorney is more difficult to establish, but a cause of action can be made out if it is shown that assent by the client to the settlement was compelled because prior misfeasance or nonfeasance by the attorneys left no other recourse. . . . [T]he cause of action for legal malpractice must stand or fall on its own merits, with no automatic waiver of a plaintiff's right to sue for malpractice merely because plaintiff had voluntarily agreed to enter into a stipulation of settlement. [*Id.,* 66.]

We find this reasoning persuasive in the present case. When the benefit of the doubt is given to plaintiff, the pleadings and the evidence were sufficient to at least raise an inference that the low mediation award and plaintiff's acceptance of that award were caused by defendants' malpractice. Therefore, we conclude that summary disposition was inappropriate.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.