*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

SUSAN J. SILLS, Trustee of the SUSAN J. SILLS
TRUST, also known as SUSAN J. SILLS-LEVEY,
Trustee of the SUSAN J. SILLS-LEVEY TRUST,
and SUSAN J. SILLS,

        Plaintiffs-Appellants,

v

KAPLAN MERZLAK, P.C. and JEFFREY
KAPLAN,

        Defendants-Appellees.

UNPUBLISHED
January 18, 2024

No. 363557
Oakland Circuit Court
LC No. 2022-194410-NM

Before: GLEICHER, P.J., and BORRELLO and SHAPIRO, JJ.

PER CURIAM.

This case involves an attempt to recover for alleged accounting errors regarding a limited liability corporation (LLC) created to manage property of plaintiff Susan J. Sills and her former husband during their marriage, as well as for the failure to file an amended tax return. Plaintiffs— the Susan J. Sills Trust (the Trust) and Sills, individually and as trustee of the Trust—sued accountant Jeffrey Kaplan and his accounting firm, Kaplan Merzlak, P.C., for accounting malpractice and breach of fiduciary duty. Plaintiffs appeal the trial court's order granting defendants summary disposition pursuant to MCR 2.116(C)(10) (no genuine issue of material fact), arguing that Sills's divorce settlement does not bar plaintiffs' claims, Sills's ability to amend her 2018 tax return does not defeat the element of causation, and summary disposition was prematurely granted because discovery had not commenced.

First, the trial court correctly concluded that plaintiffs failed to establish a genuine issue of material fact regarding causation for defendants' claims concerning the LLC. Specifically, causation is lacking as a matter of law because the LLC agreement did not require that unequal contributions be recorded as loans to the LLC, Sills was not compelled to settle with the former husband but did so anyway, and the agreement provided for no division of the LLC's assets other than an equal division between the members. The trial court also did not err by granting summary disposition in favor of defendants on plaintiffs' accounting malpractice claim arising from the

-1-

2018 tax return because Sills herself failed to file an amended return despite being able to do so. Finally, the trial court did not err by granting summary disposition in favor of defendants before the completion of discovery because extensive discovery was available from the earlier divorce action and consolidated civil action, and plaintiffs failed to offer independent evidence in support of their claim that summary disposition was premature. Therefore, we affirm.

## I. BACKGROUND

Sills married Michael Levey in 2008. Before they married, they signed a premarital agreement that defined their marital property and separate property and provided that, if they divorced, they would retain their separate property and receive a share of the marital property based upon the contribution of their separate property to the purchase of the marital property.

In January 2013, Sills and Levey formed Mr. & Mrs. Holdings, LLC (the LLC), to hold and manage real and personal property, investments, artwork, and collectibles acquired during their marriage. They signed an amended operating agreement (AOA) for the LLC on April 8, 2015, designating Sills, as trustee of her personal trust (the Trust), and Levey, as trustee of his personal trust, as the only two members of the LLC.

The AOA required the LLC to maintain a separate capital account for each member. Paragraph 2.3 of the AOA stated:

> Each Member's Capital Account shall be increased by the Member's capital contributions and the Member's share of any Profits and items of income or gain of the Company. Each Member's Capital Account shall be decreased by distributions made to the Member and the Member's share of any Losses and items of expense or loss of the Company. In accordance with Section 1.704-1(b)(2)(iv)(q) of the Treasury Regulations, each Member's Capital Account shall be adjusted in a manner that maintains equality between the aggregate of all of the Members' Capital Accounts and the amount of capital reflected on the Company's balance sheet as computed for book purposes.

The AOA specified that the members' capital accounts "are as set forth on Exhibit B." Exhibit B, in turn, specified that each member held an equal 50% "Percentage Interest." The AOA defined "Percentage Interest" as "the Percentage Interest shown next to such Member's name on Exhibit B." The AOA provided that the members could contribute additional capital contributions as necessary or appropriate to conduct business or carry out the purposes of the LLC, but "[a]ny such additional capital shall be contributed by the Members pro rata, in proportion to their percentage interests, or on any other basis agreeable to them." In addition, allocations and distributions to the members were to be based on each member's percentage interest. Upon dissolution of the LLC, the assets were to "be distributed first to creditors to the extent permitted by law, in satisfaction of the Company's debts, liabilities and obligations and then to Members in accordance with their Percentage Interests." The AOA included no specific provision for adjustment of the members' percentage interests on the basis of disproportionate contributions to the LLC.

Kaplan is a certified public accountant who performed tax accounting services for Levey before his marriage to Sills, and continued to provide those services to Sills and Levey after they married. In 2013, defendants began providing tax and accounting services to the LLC. In keeping the general ledger, defendants equalized the capital accounts of Sills and Levey, even though they were aware that Sills had contributed significantly more capital than Levey. This equalization of the capital accounts began in 2013, at Levey's instruction.

In June 2020, Levey left the marital home. Sills then hired a firm to conduct an audit of the LLC, which revealed that Sills had contributed approximately 80% of the LLC's funding. Sills then filed a complaint for divorce and, during discovery in that case, learned that defendants had equalized the contributions she and Levey had made to the LLC. Despite their unequal contributions, Levey contended in the divorce action that he was entitled to 50% of the assets of the LLC. Sills also filed a civil action in the Oakland Circuit Court seeking damages and declaratory relief against Levey and others, including defendants. Sills alleged statutory and common-law conversion, violations of MCL 450.4515 (governing actions by member of an LLC against managers or other members), and breach of the AOA against Levey; she also alleged conversion and breach of fiduciary duty against defendants. In that civil action, Levey contended that the AOA unambiguously provided that Sills and Levey each held a 50% ownership interest in the LLC. Sills settled with Levey by agreeing to pay him $1,000,000 more than she believed he was entitled to receive.

On June 3, 2022, plaintiffs filed this action against defendants in the Oakland Circuit Court, asserting Sills had contributed 81% of the assets of the LLC, Levey had contributed just 19%, defendants were aware of these unequal contributions, and defendants had altered the records of the LLC to show that Sills and Levey had contributed equally to the LLC. Plaintiffs also asserted that, because defendants failed to properly account for these unequal contributions, Sills paid Levey $1,000,000 more than he was entitled to receive in the divorce proceedings. In Count I, plaintiffs alleged that defendants owed them a fiduciary duty and breached that duty by altering the LLC's records to benefit Levey, acting to the benefit of Levey and to the detriment of plaintiffs, and representing both plaintiffs and Levey. In Count II, plaintiffs alleged that defendants had committed malpractice by failing to properly apply 26 CFR l.704-1(b)(2)(iv)(q), as required by ¶ 2.3 of the AOA. Plaintiffs also asserted that defendants had committed malpractice by altering the records of the LLC, failing to advise Sills that they were not complying with 26 CFR l.704-1(b)(2)(iv)(q), and failing to properly prepare the 2018 tax return of Sills and Levey. Plaintiffs contended that, as a result of these alleged failures, Sills was "forced" to pay Levey an additional $1,000,000 to resolve her divorce action.

In lieu of answering the complaint, defendants filed a motion for summary disposition under MCR 2.116(C)(10). First, defendants asserted plaintiffs were unable to establish causation for either malpractice or breach of fiduciary duty. Defendants asserted that Sills had full knowledge of the bookkeeping entries before she settled her divorce action, the issue in the divorce action was whether Sills and Levey had agreed on any other basis to account for their unequal capital contributions, and defendants' handling of the capital accounts had no effect on the settlement of the divorce action. Defendants also asserted that plaintiffs were unable to establish causation because the AOA included no provision for adjusting the percentage of ownership on the basis of unequal capital contributions, but established both percentage interests at 50%. Thus, defendants contended, plaintiffs were not entitled to more than 50% of the LLC regardless of any

adjustment of the capital accounts. Next, defendants asserted that plaintiffs could not establish that they were harmed by any alleged error in the 2018 tax return because they still had time to amend the return. In addition, defendants asserted that plaintiffs did not allege that the Trust was defendants' client, defendants owed no duty to the Trust, and the Trust's claims should be dismissed. Finally, defendants contended that Sills could not assert a malpractice claim for services provided to the LLC because the LLC was a distinct entity and Sills, individually, was not a member of the LLC.

Responding to the motion, plaintiffs asserted that 26 CFR 1.704-1(b)(2)(iv)(q) and ¶ 2.3 of the AOA required that Sills's surplus capital contributions be classified as a loan to the LLC, citing the deposition testimony of Kaplan and accountant Joyce Howe in the divorce action. If defendants had done so, Sills contended, she would have received $7,000,000 before she and Levey divided the remaining $4,000,000 equally; instead, defendants' failure allowed Levey to seek 50% of the entire $11,000,000 value of the LLC. Plaintiffs asserted that causation was an issue for the jury to decide and Michigan law is clear that a party forced to settle on unfavorable terms, because of the malpractice of a professional, is entitled to seek recovery of the difference between the settlement amount and the amount that would have been received in the absence of the alleged malpractice. Plaintiffs again contended that if defendants had recorded the excess contributions as a loan under the terms of the AOA, Levey would have been unable to assert a claim to 50% of the LLC, and that Sills paid Levey $1,000,000 more than he would otherwise have received in order to mitigate the risk that he would be awarded 50% of the LLC.

Plaintiffs briefly addressed their claim regarding the 2018 tax return, asserting that defendants acknowledged the return was incorrect, and that the cost to amend the return could exceed the amount of the refund. Plaintiffs also addressed the issue of duty, asserting that defendants acknowledged they represented the individuals, both Sills and Levey, and their specific interests, as well as the LLC. Plaintiffs contended that defendants (1) had a duty to treat Sills's excess contribution in a manner that was not detrimental to her interests, (2) admitted owing a duty to Sills individually as well as to the LLC, and (3) acknowledged a duty of care to not take actions for one client that detrimentally affect another client. Finally, plaintiffs relied on *Townsend v Chase Manhattan Mtg Corp*, 254 Mich App 133; 657 NW2d 741 (2002), to argue that the motion for summary disposition was premature because no discovery was conducted.

The trial court issued a 21-page opinion and order granting defendants' motion for summary disposition. The court found no genuine issue of material fact and ruled that defendants were entitled to summary disposition on the claims stemming from Sills's excess contributions to the LLC because, even assuming defendants improperly applied 26 CFR 1.704-1(b)(2)(iv)(q) and manipulated the records of the LLC without Sills's knowledge, those actions did not cause plaintiffs' injury. Citing *Espinoza v Thomas*, 189 Mich App 110, 124; 472 NW2d 16 (1991), the court explained that Sills knew of those actions before she settled with Levey and chose to settle to mitigate her risk, but defendants did not compel her to do so, and she could have sought equitable relief in the divorce action and damages in the consolidated civil action. Moreover, Levey's claim to 50% of the LLC was based on the AOA, the court reasoned, and not on the records kept by defendants. Thus, the court concluded, plaintiffs could not show that defendants caused the alleged injuries and had not "presented evidence to show a genuine issue of fact for trial."

Regarding the 2018 tax return, the court, citing *Boyle v Odette*, 168 Mich App 737, 745; 425 NW2d 472 (1988), ruled that Sills had not suffered any injury because she could still file an amended return. The court also ruled that the motion was not filed prematurely, noting that discovery in the divorce action had yielded more than 16,000 pages of documents from defendants and two depositions, and finding that further factual development would not mitigate the lack of causation. The court declined to address defendants' arguments regarding duty, and granted summary disposition in favor of defendants. The trial court subsequently entered an order denying plaintiffs' motion for reconsideration, and plaintiffs now appeal.

## II. STANDARD OF REVIEW

A trial court's decision on a motion for summary disposition is reviewed de novo. *Zaher v Miotke*, 300 Mich App 132, 139; 832 NW2d 266 (2013). Under de novo review, the legal issues are reviewed independently, with no deference required to the courts below. *Wright v Genesee Co*, 504 Mich 410, 417; 934 NW2d 805 (2019).

A motion brought under MCR 2.116(C)(10) tests the factual sufficiency of the complaint in light of the affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties. *Joseph v Auto Club Ins Ass'n*, 491 Mich 200, 206; 815 NW2d 412 (2012). "Summary disposition is appropriate under MCR 2.116(C)(10) if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). A genuine issue of material fact exists when the record reveals an issue upon which reasonable minds might differ. *Id.*

A party seeking summary disposition under MCR 2.116(C)(10) must support its motion with affidavits, depositions, admissions, or other documentary evidence in support of the grounds asserted. MCR 2.116(G)(3). If the motion is properly supported, the burden shifts to the opposing party to establish that a genuine issue of disputed fact exists. *Quinto v Cross & Peters Co*, 451 Mich 358, 362; 547 NW2d 314 (1996). A reviewing court must consider the pleadings, admissions, and other evidence in the light most favorable to the nonmoving party. *Latham v Barton Malow Co*, 480 Mich 105, 111; 746 NW2d 868 (2008).

## III. ANALYSIS

Plaintiffs first assert that the trial court erred by granting summary disposition in favor of defendants because Sills's settlement of the divorce action did not defeat causation concerning defendants' improper accounting of the LLC. However, because ¶ 2.3 of the AOA did not require that unequal contributions be recorded as loans to the LLC, Sills was not compelled to settle with Levey, and the terms of the AOA provided for no division of the LLC's assets other than an equal division between the members, the trial court correctly concluded that plaintiffs failed to establish a genuine issue of material fact regarding causation.

A certified public accountant may be liable for civil damages in connection with services performed for or on behalf of a client. MCL 600.2962(1). To prevail on a claim for accounting malpractice, the client must show "(1) the existence of a professional relationship, (2) negligence in the performance of the duties within that relationship, (3) proximate cause, and (4) the fact and extent of the client's injury." *Broz v Plante & Moran, PLLC*, 331 Mich App 39, 52; 951 NW2d

64 (2020). Similarly, "[t]o establish a claim for breach of fiduciary duty, a plaintiff must prove (1) the existence of a fiduciary duty, (2) a breach of that duty, and (3) damages caused by the breach of duty." *Highfield Beach at Lake Mich v Sanderson*, 331 Mich App 636, 666; 954 NW2d 231 (2020).

In this case, the trial court ruled that plaintiffs' claims of malpractice and breach of fiduciary duty "fail for lack of causation." The court reasoned, first, that Sills could have continued to challenge the equalization of the capital accounts in the divorce and consolidated civil action and, second, that Levey's claim to 50% of the LLC was based on the AOA, not the records of the LLC. Thus, the court concluded, plaintiffs could not show that defendants' wrongful conduct caused Levey to claim 50% of the LLC or caused Sills "to face an argument that she otherwise would not have faced."

Plaintiffs' claims against defendants in this case are premised on ¶ 2.3 of the AOA, which required the LLC to maintain separate capital accounts for each member that would be increased by each member's capital contributions, and provided that, "[i]n accordance with Section l.704-1(b)(2)(iv)(q) of the Treasury Regulations, each Member's Capital Account shall be adjusted in a manner that maintains equality between the aggregate of all of the Members' Capital Accounts and the amount of capital reflected on the Company's balance sheet as computed for book purposes." Plaintiffs maintain that, under this paragraph and 26 CFR 1.704-1(b)(2)(iv)(q), Sills's capital contributions that were made in excess of Levey's contributions were required to be recorded as loans to the LLC and repaid to plaintiffs before an equal distribution of the remaining balance.

First, we note that plaintiffs base their malpractice and breach-of-fiduciary duty claims regarding the unequal contributions to the LLC largely on an apparent misinterpretation of ¶ 2.3 of the AOA and 26 CFR 1.704-1(b)(2)(iv)(q). In their complaint, plaintiffs alleged defendants had failed to properly apply 26 CFR l.704-1(b)(2)(iv)(q), as required by ¶ 2.3, which, plaintiffs asserted, required that "disproportionate contributions by one Member would be booked as a loan on MM Holdings' books and records, which loan would be returned to the holder before dividing the then remaining assets." However, there are no references to loans in ¶ 2.3, which provides:

> The Company shall maintain a separate Capital Account for each Member. Each Member's Capital Account shall be increased by the Member's capital contributions and the Member's share of any Profits and items of income or gain of the Company. Each Member's Capital Account shall be decreased by distributions made to the Member and the Member's share of any Losses and items of expense or loss of the Company. In accordance with Section 1.704-1(b)(2)(iv)(q) of the Treasury Regulations, each Member's Capital Account shall be adjusted in a manner that maintains equality between the aggregate of all of the Members' Capital Accounts and the amount of capital reflected on the Company's balance sheet as computed for book purposes.

Similarly, there are no references to loans in 26 CFR 1.704-1(b)(2)(iv)(q), which provides:

> Adjustments where guidance is lacking. If the rules of this paragraph (b)(2)(iv) fail to provide guidance on how adjustments to the capital accounts of the partners should be made to reflect particular adjustments to partnership capital on the books of the partnership, such capital accounts will not be considered to be

determined and maintained in accordance with those rules unless such capital account adjustments are made in a manner that (1) maintains equality between the aggregate governing capital accounts of the partners and the amount of partnership capital reflected on the partnership's balance sheet, as computed for book purposes, (2) is consistent with the underlying economic arrangement of the partners, and (3) is based, wherever practicable, on Federal tax accounting principles.

Neither party cites any caselaw applying or interpreting 26 CFR 1.704-1(b)(2)(iv)(q).  The focus of the treasury regulation appears to be to ensure that the *aggregate* of the capital accounts of the partners is equal to the total amount of the partnership capital stated in the balance sheet, and neither ¶ 2.3 nor the regulation addresses whether excess contributions must be recorded as loans.

The trial court did not decide whether ¶ 2.3 or 26 CFR 1.704-1(b)(2)(iv)(q) applied in this case; rather, in its ruling, the trial court assumed that Kaplan had improperly applied the treasury regulation by failing to treat the disproportionate contributions as a loan, and assumed defendants had manipulated the books and records of the LLC at Levey's request, without Sills's knowledge or consent.  Nevertheless, the trial court concluded that neither of those actions caused plaintiffs' injuries, for two reasons.  First, the court, citing *Espinoza*, 189 Mich App at 124, found that Sills knew the facts before she chose to mitigate her risk by settling with Levey, but she was neither compelled to do so, nor left without other recourse.  Second, the court found that Levey's claim to 50% of the LLC was based on the language of the AOA, not on the records kept by defendants, and plaintiffs could not show that defendants' conduct caused Levey to make his claim or "caused her to face an argument she otherwise would not have faced."

In *Espinoza*, a legal malpractice action, the plaintiff retained the defendant to represent him in an action stemming from severe injuries he received in an attack by striking auto workers.  However, the defendant failed to file an action for assault and battery before expiration of the statutory limitations period.  The plaintiff then hired another attorney, who filed an action alleging negligence and intentional infliction of emotional distress.  This action led to a mediation award of $16,000, which all parties accepted.  The plaintiff filed a malpractice action against the defendant, which was dismissed on the basis that the plaintiff had been fully compensated by accepting the mediation award. *Espinoza*, 189 Mich App at 112-115.

This Court reversed, concluding that the plaintiff had lost a viable cause of action for assault and battery, which weakened his remaining claims and resulted in a lower award. *Espinoza*, 189 Mich App at 119, 124.  After reviewing decisions from other jurisdictions, this Court adopted the reasoning of the Supreme Court of New York County, New York, explaining that when the underlying action has been terminated by a settlement, rather than a dismissal or adverse judgment, "malpractice by the attorney is more difficult to establish, but a cause of action can be made out if it is shown that assent by the client to the settlement was compelled because prior misfeasance or nonfeasance by the attorneys left no other recourse . . . ." *Id.* at 124, quoting *Becker v Julien, Blitz & Schlesinger, PC*, 95 Misc 2d 64; 406 NYS2d 412 (1977), modified on other grounds 66 AD2d 674; 411 NYS2d 17 (1978).  Viewing the evidence in a light most favorable to the plaintiff, this Court reversed the grant of summary disposition. *Espinoza*, 189 Mich App at 124.

Later that year, this Court decided *Lowman v Karp*, 190 Mich App 448; 476 NW2d 428 (1991), another legal malpractice action stemming from a settlement.  In that case, the plaintiff

retained the defendant to file suit against three individuals. Two of the individuals were never served with the complaint and were dismissed from the case. A second complaint against them was filed, but was dismissed as untimely. They were later added as third-party defendants. As trial neared, the case was settled. Eight months later, the plaintiff filed a malpractice action against the defendant, alleging that he had refused to try the case and informed her that if she did not settle she would have to pay him an hourly rate for the time he had spent on the case. The district court granted summary disposition in favor of the defendant, concluding that the plaintiff was estopped by her agreement to the settlement to complain of the defendant's conduct. The circuit court affirmed that decision on the basis of the fact that the plaintiff had agreed to the settlement. *Id*. at 448-450.

On appeal, this Court reversed, framing the issue as "whether a plaintiff in a legal malpractice case, having settled with the defendants in the underlying action, is thereafter precluded as a matter of law from maintaining a subsequent legal malpractice cause of action against the attorney who represented her in the underlying action." *Lowman*, 190 Mich App at 451. Observing that the defendant's refusal to proceed to trial, on the eve of trial, placed the plaintiff in a situation in which "settlement was her only reasonable choice," this Court concluded that the "plaintiff's settlement of the underlying action should not act as an absolute bar to a subsequent legal malpractice action." *Id*. at 453. It reasoned that "[t]he matter arose so close to trial that it would have been very difficult, if not impossible, for [the] plaintiff to obtain another attorney." *Id*.

Plaintiffs rely on both *Espinoza* and *Lowman*, but neither case compels reversal of the trial court's order in this case. In *Espinoza*, 189 Mich App at 120, the plaintiff lost a viable cause of action because of the negligence of her attorney. In *Lowman*, 190 Mich App at 453, the plaintiff's attorney refused to try the case, leaving the plaintiff with no viable option but to settle. Here, the trial court correctly concluded that plaintiffs were not compelled to settle and had other recourse. First, plaintiffs had the opportunity to contest Levey's claim in both the divorce case as well as the consolidated civil action. Second, plaintiffs had the opportunity to recover from defendants in the consolidated civil action, in which plaintiffs alleged conversion and breach of fiduciary duty against defendants.

Plaintiffs argue that they had no adequate remedy against defendants in the divorce action because defendants were not parties to that action, the divorce court had limited equitable jurisdiction, and equity was not available because MCL 600.2962 provided an adequate statutory remedy. However, this argument is something of a red herring. In *Sparks v Sparks*, 440 Mich 141, 159-160; 485 NW2d 893 (1992), our Supreme Court explained that, in a divorce case, a trial court has broad discretion in determining the division of marital property. One of the factors to be considered is the "contributions of the parties to the marital estate . . . ." Thus, the divorce court could have awarded Sills 81% of the LLC; Sills's settlement with Levey effectively curtailed that possibility. At no point did defendants make it impossible or even very difficult for Sills to pursue her argument for 81% of the LLC, nor in any way compelled her to settle with no other recourse. Rather, as plaintiff's argument makes clear, Sills voluntarily settled with Levey in an effort to mitigate risk in the divorce case. Although plaintiffs contend that the divorce court lacked equitable jurisdiction over defendants, this was mitigated by the consolidated civil action against defendants, in which the court could have granted the relief Sills sought. And whether MCL 600.2962, governing malpractice actions against certified public accountants, divested the court of

equitable jurisdiction is irrelevant because Sills had already named defendants in the consolidated civil action and could have alleged a malpractice claim in that action.

Further, the trial court correctly found Levey's claim to 50% of the LLC was based on the language of the AOA, not on the records kept by defendants. Although the AOA provided that "[e]ach member's capital account shall be increased by the Member's capital contributions," the AOA also specified that the members' capital accounts were "as set forth on Exhibit B," and that each member held an equal 50% "Percentage Interest." The AOA provided that the members could contribute additional capital contributions as necessary or appropriate to conduct business or carry out the purposes of the LLC, but "any such additional capital shall be contributed by the Members pro rata, in proportion to their percentage interests, or on any other basis agreeable to them." In addition, allocations and distributions to the members were to be based on each member's percentage interest. Upon dissolution of the LLC, the assets were to "be distributed first to creditors to the extent permitted by law, in satisfaction of the Company's debts, liabilities and obligations and then to Members *in accordance with their Percentage Interests*." (Emphasis added.) However, as the trial court found, the AOA included no provision for adjustment of the members' equal, 50% percentage interests based on disproportionate contributions to the LLC.

Plaintiffs also contend that causation is an issue for the trier of fact. However, "while causation is generally a matter for the trier of fact, if there is no issue of material fact, then the issue is one of law for the court." *Holton v A+ Ins Assoc, Inc*, 255 Mich App 318, 326; 661 NW2d 248 (2003). Here, the terms of the AOA provided for no division of the LLC's assets, other than an equal division between the members. Accordingly, the trial court correctly concluded that plaintiffs failed to establish a genuine issue of material fact regarding causation.

Next, plaintiffs contend that Sills's ability to file an amended 2018 tax return does not defeat causation on plaintiffs' accounting malpractice claim arising from the 2018 tax return. We conclude that because plaintiffs failed to file an amended return, the trial court did not err by granting summary disposition in favor of defendants.

The trial court, citing *Boyle*, 168 Mich App at 745, ruled that "there is no dispute that Sills can still file an amended return, thereby negating causation," and found that plaintiffs' damages were speculative. In *Boyle*, the plaintiff was injured in a motor-vehicle accident and retained the defendant to represent her in claims arising from the accident. After the plaintiff obtained a settlement against the other driver and his insurer, she hired new counsel to represent her in additional claims arising from the accident and subsequently sued the defendant for malpractice. The trial court granted summary disposition in favor of the defendant, and the plaintiff appealed to this Court, contending that the trial court should have granted her request to amend her complaint to allege malpractice on the basis of the defendant's failure to file a social-host action before expiration of the period of limitations for that action. *Id.* at 740-743. Affirming the trial court, this Court ruled that the defendant could not be held liable for failing to file a social-host action because "he ceased to represent plaintiff and was replaced by other counsel before the statutory period ran on her underlying action." *Id.* at 745.

Defendants here prepared a draft amended return for Sills and Levey and presented it to Sills and Levy under cover of a letter dated June 2, 2021, with instructions to sign, date, and return the document "AS SOON AS POSSIBLE." Kaplan was questioned in his deposition in the divorce

action by Sills's counsel six days later. The amended return was never filed, and plaintiffs' complaint was filed one year later in June 2022, with plaintiffs alleging that defendants breached the standard of care by failing to properly prepare the 2018 tax return and failing to correct the errors. Plaintiffs assert that Sills wanted defendants to file an amended return, but defendants refused to sign and file the amended return. In the trial court, plaintiffs asserted both that defendants "refuse to present a return for the parties to sign" and "have prepared the amended return, but now refuse to sign it or stand behind it because Plaintiffs have filed this action against them." Contrary to plaintiffs' argument here, it appears that defendants did present an amended tax return for Sills and Levey to sign on June 2, 2021. Moreover, Sills has provided no evidence or affidavit to support the assertion that defendants refused to sign it, or stating when they refused to do so. In addition, Sills failed to provide any support for the assertion that a new accountant was required to review the 2018 and prepare an amended return, and only speculated that the cost of doing so "will likely be a large portion of the refund or exceed the refund."

Defendants do not contest plaintiffs' assertion that they refused to sign the amended return, but instead assert that their professional relationship with Sills ended either when Kaplan was questioned in his deposition, or one year later, when the malpractice action was filed, and when Sills still had time to correct the alleged malpractice by filing an amended return, citing *Morgan v Taylor*, 434 Mich 180, 189 n 15; 451 NW2d 852 (1990), for the proposition that filing a malpractice action ends the professional relationship.[1] However, Sills sued defendants in the consolidated action as early as March 12, 2021, yet defendants presented an amended return three months later, on June 2, 2021. Defendants have presented no evidence that they ever ended the professional relationship.

A claim for refund of overpaid federal income tax must generally be filed within three years from the time the return was filed or two years from the time the tax was paid, whichever is later. See 26 USC 6511(a). Defendants presented evidence that the 2018 tax return of Sills and Levey was filed on October 14, 2019. Thus, Sills could have filed an amended return as late as October 14, 2022. Whether defendants terminated their relationship with plaintiffs does not alter the fact that defendants presented an amended return to Sills and Levey one year before plaintiffs filed this action, plaintiffs presented no evidence that defendants "refused" to file an amended return or of when they refused to do so, and plaintiffs still had time to file an amended return, even after the trial court granted summary disposition. The trial court did not err by granting summary disposition in favor of defendants.

Moreover, plaintiffs contend the trial court erred by granting summary disposition before discovery had even commenced. Because plaintiffs failed to offer independent evidence in support

---

[1] In this case, the Supreme Court held that the statute of limitations in a medical malpractice case "begins to run when there is an 'occurrence' between visits which indicates that the original doctor-patient relationship and its 'accompanying air of trustfulness' have been terminated." *Morgan*, 434 Mich at 189. The Court explained that "[i]n other cases, the facts indicated an occurrence, such as the plaintiff's consultation with attorneys concerning a possible malpractice claim or the plaintiff's decision to no longer treat the defendant, severed the doctor-patient relationship." *Id*. at 189 n 15.

of their opposition to the motion for summary disposition, we conclude that the trial court did not err by granting summary disposition in favor of defendants before the completion of discovery.

Summary disposition is generally premature if granted before the completion of discovery on a disputed issue, but may be appropriate "if there is no fair chance that further discovery will result in factual support for the party opposing the motion." *Mackey v Dep't of Corrections*, 205 Mich App 330, 333; 517 NW2d 303 (1994). A party opposing summary disposition may not simply allege that summary disposition is premature, but must clearly identify a disputed issue for which they assert discovery must be conducted, support the issue with independent evidence, and show that further discovery presents a fair likelihood of providing factual support for the opposing party's position. *Powell-Murphy v Revitalizing Auto Communities Environmental Response Trust*, 333 Mich App 234, 253; 964 NW2d 50 (2020).

The trial court ruled that summary disposition was not premature because the parties had been engaged in litigation since 2020, Sills had hired a certified public accountant to audit the LLC, and Sills had engaged in extensive discovery in the divorce action and consolidated civil action, which produced 16,000 pages of documents and included the depositions of Kaplan and a staff accountant from his firm. The court concluded that no amount of discovery would establish a causal connection between defendants' conduct and plaintiffs' alleged injuries or alter the fact that the time for filing an amended 2018 tax return had not expired.

Plaintiffs contend the discovery from the divorce case did not include expert testimony and the issues raised in the divorce action did not focus on breach of duty and malpractice. However, Kaplan's deposition in the divorce action was focused extensively on conduct that plaintiffs alleged constituted malpractice. Moreover, plaintiffs' allegations of malpractice arising from defendants' treatment of the unequal contributions relied almost exclusively on plaintiffs' claim that ¶ 2.3 of the AOA and 26 CFR 1.704-1(b)(2)(iv)(q) required that unequal capital contributions be treated as loans to the LLC. However, neither ¶ 2.3 nor 26 CFR 1.704-1(b)(2)(iv)(q) include such a requirement, plaintiffs failed to produce any expert testimony or argument to support that interpretation, and there is no likelihood that further discovery will do so. Indeed, plaintiffs failed to support this argument with any affidavits or evidence regarding expert testimony that might be offered. While plaintiffs also alleged malpractice and breach of fiduciary duty in connection with defendants' equalization of their capital contributions, plaintiffs have not offered any independent evidence in support of this issue. Regarding the 2018 tax return, there is no likelihood that further discovery will alter the fact that Sills had until October 14, 2022, to file an amended return.

Finally, as alternative grounds to affirm the trial court, defendants assert they owed no duty to plaintiffs' trust, they owed no duty to Sills related to his services provided to the LLC, and any duty owed to Sills would not extend to services he provided to the LLC.[2] The trial court declined to address this issue, having granted summary disposition on the basis of lack of causation.

---

[2] An appellee need not file a cross-appeal to argue alternative reasons affirm a trial court's decision, but to properly preserve a claim for appeal, the reasons must first be presented to the lower court. *City of Riverview v Sibley Limestone*, 270 Mich App 627, 633 n 4; 716 NW2d 615 (2006).

-11-

Because we affirm the trial court's order granting summary disposition in favor of defendants, we likewise decline to address this issue.

Affirmed.

/s/ Elizabeth L. Gleicher
/s/ Stephen L. Borrello
/s/ Douglas B. Shapiro