NOT RECOMMENDED FOR PUBLICATION
File Name: 14a0263n.06
No. 13-1426

**FILED**
Apr 08, 2014
DEBORAH S. HUNT, Clerk

**UNITED STATES COURTS OF APPEALS
FOR THE SIXTH CIRCUIT**

FERNANDO DAVIS,                                )
                                               )
    Plaintiff-Appellee                         )
                                               )
v.                                             )
                                               )
ROBERT J. PICKELL, et al.,                     )
                                               )
    Defendants,                                )     ON APPEAL FROM THE
                                               )     UNITED STATES DISTRICT
and                                            )     COURT FOR THE  EASTERN
                                               )     DISTRICT OF MICHIGAN
BAYLOCK, Genesee County Sheriff's Department   )
Deputy Officer; MACEY, Genesee County Sheriff  )
Department Deputy Sheriff; BUCHANAN, Sergeant, )
Genesee County Sheriff Department, COCKING,    )
Deputy, Genesee County Sheriff Department      )
                                               )
    Defendants-Appellants.                     )
                                               )

BEFORE:    COLE and ROGERS, Circuit Judges; HOOD, District Judge.[*]

ROGERS, Circuit Judge.  Late in the night of March 24, 2009, Fernando Davis was arrested for drunk driving and taken to the Genesee County Jail in Michigan, where he was booked into a holding cell.  Davis alleges that during that process, the Genesee County deputy sheriffs Baylock, Macey, Buchanan, and Cocking subjected him to excessive force when they tackled and pepper sprayed him in the course of removing his jacket and shoes.  The district court denied the deputies summary judgment because the security footage from that night

_____

[*] The Honorable Joseph M. Hood, United States District Judge for the Eastern District of Kentucky, sitting by designation.

demonstrates a genuine issue of material fact as to whether the officers acted improperly in tackling and pepper spraying Davis. For the purposes of their appeal, the deputies concede the facts as alleged by Davis, and argue only that they are entitled to qualified and governmental immunity on Davis' § 1983 claims and state law claims, respectively. The district court concluded that construed in the light most favorable to Davis, there exists a genuine issue of material fact as to whether he was resisting or threatening the deputies. Taking, as given, the facts that the district court assumed in denying the deputies summary judgment (i.e., that Davis was not resisting or threatening the officers), the deputies are not entitled to qualified or governmental immunity.

On the night of March 24, 2009, Fernando Davis was arrested for operating a vehicle under the influence of liquor with a blood alcohol content of 0.19, more than twice the legal limit. Davis was taken to Genesee County Jail, where Deputies Baylock and Macey initially processed Davis and placed him in a holding cell with approximately twenty other arrestees. He was then taken to a safety cell with his hands behind his back, was sprayed with mace and slammed to the ground in the hallway. Davis was beaten unconscious. When he came to in the cell, he was bleeding. The beating "resulted in Plaintiff's great bodily harm, injury, pain and suffering which ultimately required surgical procedures on his back."

The deputies claim that inside the collective holding cell, Davis was pacing back and forth and engaging in "verbal spats" with the other inmates, but the deputies admitted that they could not hear any conversation inside the cell. The officers decided to remove Davis to a single-inmate "safety cell." Deputy Buchanan testified that Davis was noncompliant when the officers asked him to step out of the holding cell, and that he walked slowly and continued to show agitated behavior. Inside the safety cell, the deputies asked Davis to remove his shoes, but

Davis "glared" and walked toward the cell door with his "fists balled up." Deputy Cocking testified that Davis pushed one of his shoes part-way off with his other foot and kicked it toward Buchanan, at which point he and the other deputies pushed Davis back into the cell and tackled him. The struggle continued until Deputy Buchanan administered pepper spray.

The magistrate judge reviewed the security footage from the evening in question, from the time Davis was brought to the station to the moments after the scuffle when a nurse attended to Davis, and concluded that "viewed in the light most favorable to the Plaintiff," it "support[s] his claim that the Deputies beat him and assaulted him not in order to maintain discipline, but without cause, for the purpose of punishment." The magistrate judge addressed the dispute over "which constitutional right governs Plaintiff's excessive force claim." Under *Aldini v. Johnson*, 609 F.3d 858 (6th Cir. 2010), the Fourth Amendment's "reasonableness" standard applies "to excessive force claims brought by individuals who, like the Plaintiff, had been arrested and turned over [to] the jail authorities for booking, but who ha[s] not yet appeared before a judge for a probable cause hearing." However, *Aldini* was decided more than one year after the facts giving rise to Davis' claim occurred, and therefore, at the time of the incident "it was not clearly established that the Fourth Amendment governed excessive force claims, and . . . therefore, for purposes of a qualified immunity analysis, the Fourteenth Amendment due process standard should be applied." The magistrate judge recommended denying the deputies' motion for summary judgment as to Davis' § 1983 claim, finding that a genuine issue of material fact exists as to whether (viewed in the light most favorable to Davis) Davis was resisting or threatening the officers. The magistrate judge concluded that, "This creates an issue of fact as to both a Fourth and a Fourteenth Amendment violation . . ., and at the same time defeats a claim of qualified immunity since the Fourteenth Amendment protection against gratuitous violence at the hands of

state officials was clearly established at the time of this incident." In addition, the magistrate judge noted, "If there is sufficient evidence of improper use of excessive force to defeat summary judgment as to the § 1983 claim, there is necessarily sufficient evidence to support the state law claim of assault and battery." As to Davis' claim that he suffered intentional infliction of emotional distress, "[T]here are sufficient facts for a jury to find that Sheriff's Deputies administered a severe and unprovoked beating to an intoxicated prisoner. This could fairly be characterized as outrageous behavior. Summary judgment should be denied as to the [intentional infliction of emotional distress] count."[1]

The district court adopted the magistrate judge's recommendation, and elaborated on the confusion over "the substantive standard of conduct that must inform the Court's consideration of the defense" of qualified immunity for Davis' § 1983 claim. The district court determined, as the magistrate judge had, that "[a]lthough the Fourteenth Amendment due process standard may be more demanding than the Fourth Amendment objective reasonableness standard, it does not give jail officials free rein to mete out physical punishment at will." The court concluded, "Because the record presented to the Court does not establish that the deputies acted in response to a legitimate need to restore order or secure compliance with their orders, they are not entitled to the shield of qualified immunity against the claim that they used excessive force at this state of the case." The district court adopted the magistrate judge's reasoning in denying the officers governmental immunity on the state law claims of assault and battery and intentional infliction of emotional distress.

Taking, as given, the facts that the district court assumed in denying the officers summary judgment (i.e., that Davis was not threatening or resisting the officers when they tackled him), the deputies are not entitled to qualified immunity because their actions shock the conscience.

---

[1] The other issues the magistrate judge decided are not relevant because Davis has not raised them on appeal.

On an interlocutory appeal from a denial of summary judgment based on qualified immunity, this court must "'take, as given, the facts that the district court assumed when it denied summary judgment' and, when that is unclear, … 'determine what facts the district court…likely assumed.'" *Romo v. Largen*, 723 F.3d 670, 675 (6th Cir. 2013) (quoting *Johnson v. Jones*, 515 U.S. 304, 319 (1995)). Based on those facts in this case, the officers are not entitled to qualified immunity for their treatment of Davis because their "actions involved force employed 'maliciously and sadistically for the very purpose of causing harm' rather than 'in a good faith effort to maintain or restore discipline.'"[2] *Claybrook v. Birchwell*, 199 F.3d 350, 359 (6th Cir. 2000) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 846-47 (1998)).

The magistrate judge's report provides a detailed and accurate summary of the relevant portions of the prison video footage:

> Tape [05] Plaintiff is brought into the booking area. At 36:19, a deputy pats him down, and takes his belt. Plaintiff removes his shoes and socks. The deputy returns them, and Plaintiff puts them back on. He is then escorted out of the area with another prisoner. Throughout, Plaintiff appears cooperative and responsive to orders. Tape concludes at 43:10.
>
> Tape [08] At 43:07 to 44:34, Plaintiff is taken through the lobby/booking area. He still appears cooperative.
>
> Tape [07] Same as Tape [08], but from a different angle, specifically looking out from behind the glassed in area.
>
> Tape [09] Again the lobby/booking area. Plaintiff leaves the area at 44:47.
>
> Tape [04] This is a holding area with a large number of prisoners; at least one is seated, many appear to be sleeping on the floor. The Plaintiff, wearing tennis shoes and a sweatshirt, enters at 49:04. He stands/walks for a short time, appears to possibly be speaking to other prisoners. Most of the other prisoners remain sleeping. A man is seated at a small bench, looks around, but otherwise remains seated. The Plaintiff sits down next to him, does not appear particularly agitated

---

[2] This court need not decide the dispute over whether the Fourth Amendment or the Fourteenth Amendment governs the resolution of the deputies' qualified immunity claim because the district court applied the more stringent Fourteenth Amendment standard in denying summary judgment.

or aggressive. At 51:20, deputies enter and appear to speak to the Plaintiff, who gets up and accompanies them out of the cell.

Tape [09] Again, the lobby/booking area. The Plaintiff and the deputies enter at 46:37. Plaintiff stops momentarily and appears to be ta[l]king to the deputies. He is not in restraints, and there is no physical contact between him and the deputies. He generally appears non-aggressive and cooperative, and leaves the area with the deputies at 47:24.

Tape [01] This is a hallway outside of the one-person safety cell. At 51:42, the Plaintiff enters the cell in the company of six deputies. Two deputies, including Deputy Buchanan, leave the cell. At 53:15, a jacket is thrown out of the door into the hallway.

Tape [10] This is the inside of the safety cell. There is what appears to be a metal cot built into the far wall. The Plaintiff enters the cell at 51:43. He stands by the cot (opposite the door), and appears to gesture. He then walks toward the door. As he approaches the door, the Deputies enter *en masse* and grab the Plaintiff, taking him to the ground. During the scuffle that ensues, it is difficult to see the Plaintiff since the Deputies are on top of him, but the Deputies appear to be engaged in an aggressive struggle. Plaintiff's jacket is removed, and at 52:47, one of the Deputies appears to be either removing the Plaintiff's jacket (Plaintiff still cannot be seen) or punching him. At 53:15, it appears that the Plaintiff is pepper-sprayed. The Deputies exit the cell at 53:20, leaving the Plaintiff face-down on the floor. At 53:11, the Plaintiff gets up slowly. He appears to be in a great deal of discomfort, staggering about the cell and rubbing his eyes. Approximately 50 minutes later, at 141:04, two Deputies enter the cell and escort the Plaintiff out. At this time, there appears to be blood in the toilet.

Tape [01] At 1:40, the Deputies are bringing the Plaintiff out of the cell into the hallway.

Tape [13] This tape is designated "Property Room." At 1:59, the Deputies are bringing the Plaintiff down the hallway, toward the camera. The Plaintiff enters what appears to be the nurses' station at 2:00, wearing different clothes.

Tape [09] Again, the booking area. Plaintiff enters at 1:39, with a cloth over his face.

Tape [13] Plaintiff enters the nurses' station at 2:00, and leaves at 2:03.

Tape [01] Plaintiff is taken back to the single-prisoner cell at 2:04.

Tape [10] Plaintiff enters the cell at 2:04. It appears that the cell and the toilet have been cleaned.

As the district court elaborated, "The shoe in question does appear low in the frame, moving on or very close to the floor, just before the deputies rush the cell," but "it is not at all apparent from the video that it was thrown or kicked with any substantial force, or that it struck anything." In addition, "the tape does not depict [Davis] with his fists clearly 'balled up,' and in fact it does show his right hand open and flat, as [Davis] raises it and places it on the wall next to him, apparently to balance himself while he removes his shoe." Accordingly, "[n]othing about [Davis'] demeanor or approach to the door compels the conclusion that he was acting 'aggressively' in the moments before deputies rush the cell and tackle him."

The deputies are not entitled to qualified immunity because if Davis was neither threatening nor resisting the officers, the force they used on a compliant inmate shocks the conscience. The officers contend that their use of physical force and chemical spray to restore order and discipline in a jail setting is not comparable to the kinds of conscience-shocking behavior the Supreme Court and other circuit courts have found to violate substantive due process (e.g., pumping a suspect's stomach in search of evidence, *Rochin v. California*, 342 U.S. 165 (1952); raping an individual, *Jones v. Wellham*, 104 F.3d 620 (4th Cir. 1997); or shooting a fleeing suspect without any probable cause other than the suspect failing to stop, *Aldridge v. Mullins*, 377 F. Supp. 850 (M.D. Tenn. 1972), *aff'd*, 474 F.2d 1189 (6th Cir. 1973)). But this begs the question of whether there was a need to restore order, presumably because Davis was resisting in the first place. For the purposes of this appeal, we must take, as given, the facts that the district court assumed in denying the officers summary judgment based on qualified immunity. Indeed, the deputies "concede to the facts as alleged by Davis." Appellant Br., at 3. As the district court correctly concluded, "[T]he Fourteenth Amendment due process standard may be more demanding than the Fourth Amendment objective reasonableness standard, [but] it

does not give jail officials free rein to mete out physical punishment at will," and "[i]t shocks the conscience to beat senseless an unresisting prisoner in order to remove his shoes and jacket." R. 55, at 8, PageID #498.

The deputies are not entitled to qualified immunity on the alternative theory that the constitutional right Davis alleges they violated was not clearly established at the time of the challenged conduct. Appellant Br., at 49. Unless the officers' actions perfectly mirror facts already found to shock the conscience (e.g., stomach pumping to obtain evidence), they will always fall somewhere along a continuum, more or less resembling established violations of constitutional rights. Assuming, as this court must (and as the video footage suggests), that Davis was not threatening or resisting the officers, and contrary to the deputies' assertion, it can "be said that 'beyond debate,' the Deputies would have been aware that the complained-of force—grabbing Davis, slamming him to the ground, kicking and punching him, and pepper-spraying him—constituted a constitutional violation under these circumstances." Appellant Br. at 54. Therefore, the deputies are not entitled to qualified immunity.

The officers are not entitled to governmental immunity on Davis' state law claims of assault and battery and intentional infliction of emotional distress for the same reasons that they are not entitled to qualified immunity for Davis' § 1983 claim, and summary judgment is therefore improper.

Davis has undoubtedly made out a claim for assault and battery. Under Michigan law, assault is defined as "any intentional unlawful offer of corporal injury to another person by force, or force unlawfully directed toward the person of another, under circumstances which create a well-founded apprehension of imminent contact, coupled with the apparent present ability to accomplish the contact." *Espinoza v. Thomas*, 189 Mich. App. 110, 472 N.W.2d 16, 21 (1991).

Battery is defined as "willful and harmful or offensive touching of another person which results from an act intended to cause such a contact." *Id.*

The deputies are not entitled to governmental immunity for Davis' intentional tort claims because even though they acted within the scope of their employment, and acted in a discretionary, rather than a ministerial, manner, a jury could find that they did not act in good faith. *See Odom v. Wayne County*, 482 Mich. 459, 760 N.W.2d 217 (2008). For the same reasons that under a § 1983 claim analysis a jury could conclude that Davis was not resisting or threatening the officers, and that the officers therefore did not act "in a good faith effort to maintain or restore discipline," the deputies are not entitled to summary judgment based on governmental immunity for Davis' state law claims. Assuming that Davis was not threatening or resisting the officers, the officers did not act in good faith, but instead beat Davis "*maliciously* or with a *wanton or reckless disregard of the rights of another*." *Odom*, 482 Mich. at 474 (emphasis in original).

Because the district court assumed and the video footage suggests that Davis was not resisting or threatening the deputies when they tackled and pepper sprayed him, the officers are not entitled to summary judgment based on qualified or governmental immunity. The judgment of the district court is affirmed.