*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

KIMBERLY TURRENTINE and CHELSEA
CUMMINGS,

        Plaintiffs-Appellees,

v

JAGU LLC, doing business as SUPER 8
BELLEVILLE, and ASHISHKUMAR K. PATEL,

        Defendants-Appellants,

and

WYNDHAM HOTELS & RESORTS INC., SURAJ
REALTY CORPORATION, SUNILBHAI T.
PATEL, and KOSO-RAJU BABU-RAO,

        Defendants.

UNPUBLISHED
January 13, 2025
11:11 AM

No. 368405
Wayne Circuit Court
LC No. 22-009735-NO

Before: RIORDAN, P.J., and BOONSTRA and YATES, JJ.

PER CURIAM.

Defendants, Jagu LLC, doing business as Super 8 Belleville ("Jagu"), and Ashishkumar K. Patel ("Patel"), appeal by leave granted[1] the order denying summary disposition under MCR 2.116(C)(10) (no genuine issue of material fact). We reverse and remand to the trial court for an order granting summary disposition in favor of defendants.[2]

---

[1] *Turrentine v Jagu LLC*, unpublished order of the Court of Appeals, entered March 11, 2024 (Docket No. 368405).

[2] Except as otherwise noted, any reference to defendants refers only to Jagu and Patel.

# I. BACKGROUND

This matter stems from two incidents of sexual assault by a Jagu employee, defendant Koso-Raju Babu-Rao ("Babu-Rao"), against plaintiffs Chelsea Cummings ("Cummings") and Kimberly Turrentine ("Turrentine") at a Super 8 Motel in Belleville, Michigan (the "Super 8"). Patel owns Jagu, which bought the Super 8 on February 9, 2018; Jagu was the owner when the incidents involving plaintiffs and Babu-Rao occurred. Babu-Rao was hired by Patel to work as a front desk clerk at the Super 8. Babu-Rao worked night shifts at the Super 8 from 2018 to 2020. On July 31, 2019, while Cummings was walking to her room, it was alleged that Babu-Rao "grabbed" her, "kissed [her] cheek of [her] face," and "grabbed both of [her] breasts and started to squeeze and fondle [her] breasts." Cummings checked out the next morning and reported the incident to the police.

On December 29, 2019, Babu-Rao went to Turrentine's room to repair her television and telephone. Babu-Rao grabbed Turrentine's buttocks. Turrentine "screamed" and told Babu-Rao "not to touch her." Babu-Rao pushed Turrentine on the bed, "got on top of [Turrentine], grabbed her breasts[,] pulled his pants and underwear down and attempted to penetrate [Turrentine] with his penis."[3] Turrentine "[k]icked and hit Babu-Rao until he got off of her and left the room." Turrentine reported the incident to police. A warrant was recommended and received by the Wayne County Prosecutor's Office on September 2, 2019. Babu-Rao was arrested on January 3, 2020.

Turrentine filed a complaint against "Super 8, Belleville, a Michigan DBA" and Patel, in addition to Babu-Rao and defendants Wyndham Hotels & Resorts, Inc., Suraj Realty Corporation, and Sunilbhai T. Patel, alleging (I) negligent hiring; (II) negligent retention; (III) negligent supervision; and (IV) assault and battery. Wyndham, Super 8, Patel, and Babu-Rao filed an answer to the complaint.[4] An amended complaint was filed, adding Cummings as a plaintiff and Jagu as a defendant. The amended complaint included allegations of sexual assault by Babu-Rao against Cummings, in addition to the same allegations included in the complaint involving Turrentine. The amended complaint alleged (I) negligent hiring as to all defendants for the acts committed by Babu-Rao against Turrentine; (II) negligent retention as to all defendants for the acts committed by Babu-Rao against Turrentine; (III) negligent supervision as to all defendants for the acts committed by Babu-Rao against Turrentine; (IV) assault and battery as to all defendants for Babu-Rao's sexual assault of Turrentine; and (V) assault and battery as to Babu-Rao for his sexual assault of Cummings. Jagu, Patel, and Wyndham filed an answer and affirmative defenses to the amended complaint.

---

[3] In her police report, Turrentine did not state that Babu-Rao removed his pants or attempted to penetrate her. Turrentine stated in the police report only that "she believed she would have been forcibly raped" if she had not "fought Babu-Rao off[.]"

[4] Suraj Realty Corporation and Sunilbhai T. Patel were dismissed for nonservice under MCR 2.102(E).

Jagu, Patel, and Wyndham moved for summary disposition under MCR 2.116(C)(10), arguing that plaintiffs' claims should be dismissed. Plaintiffs filed an answer to the motion for summary disposition. Jagu, Patel, and Wyndham filed a reply. The trial court held a hearing on the motion for summary disposition. After oral argument, the trial court denied the motion for summary disposition as to Jagu and Patel, concluding that the evidence presented questions of fact. The trial court thereafter entered an order denying the motion for summary disposition as to plaintiffs' claims against Jagu and Patel, and granting the motion for summary disposition as to plaintiffs' claims against Wyndham.[5] This appeal ensued.

## II. ANALYSIS

Defendants argue that the trial court erred by denying their motion for summary disposition because plaintiffs failed to establish a genuine issue of material fact.[6] We agree.

"[This Court] review[s] de novo a trial court's decision on a motion for summary disposition." *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). "A motion under MCR 2.116(C)(10) . . . tests the *factual sufficiency* of a claim." *Id*. at 160. "When considering such a motion, a trial court must consider all evidence submitted by the parties in the light most favorable to the party opposing the motion." *Id*. "A motion under MCR 2.116(C)(10) may only be granted when there is no genuine issue of material fact." *Id*. "A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ." *Id*. (quotation marks and citation omitted). "If no facts are in dispute, and if reasonable minds could not differ regarding the legal effect of those facts, whether summary disposition is proper is a question of law for the Court." *Miller Estate v Angels' Place, Inc*, 334 Mich App 325, 330; 964 NW2d 839 (2020).

Regarding plaintiffs' claims of assault and battery:

An assault is . . . any intentional unlawful offer of corporal injury to another person by force, or force unlawfully directed toward the person of another, under circumstances which create a well-founded apprehension of imminent contact, coupled with the apparent present ability to accomplish the contact. A battery is the wilful and harmful or offensive touching of another person which results from an act intended to cause such a contact. [*Espinoza v Thomas*, 189 Mich App 110, 119; 472 NW2d 16 (1991) (citations omitted).]

Under the doctrine of respondeat superior, "[a]n employer is generally liable for the torts its employees commit within the scope of their employment" and "not liable for the torts . . . committed by an employee when those torts are beyond the scope of the employer's business." *Hamed v Wayne Co*, 490 Mich 1, 10-11; 803 NW2d 237 (2011) (quotation marks and citation

---

[5] Jagu and Patel moved to stay the proceedings pending this appeal. The trial court granted that request.

[6] Given the claims pleaded in the amended complaint, only defendants' liability as to the assault against Turrentine is at issue on appeal.

omitted). "This Court has defined within the scope of employment to mean engaged in the service of his master, or while about his master's business. Independent action, intended solely to further the employee's individual interests, cannot be fairly characterized as falling within the scope of employment." *Id*. at 11 (quotation marks and citations omitted).

> The general rule that an employer is not liable for acts of its employee outside the scope of its business, however, does not preclude vicarious liability in every instance. This Court has consistently recognized that an employer can be held liable for its employee's conduct if the employer knew or should have known of the employee's propensities and criminal record before that employee committed an intentional tort. This inquiry involves an analysis of whether an employer had (1) actual or constructive knowledge of prior similar conduct and (2) actual or constructive knowledge of the employee's propensity to act in accordance with that conduct. Under this two-pronged approach, the conduct at issue may be so close in time to prior similar conduct that knowledge under the first prong gives rise to a valid inference that the conduct was foreseeable under the second prong. Conversely, if an employee's actions were temporally distant and the employee's recent record suggested a change in character, foreseeability would not be established. [*Id*. at 12 (cleaned up).]

"[The Supreme Court] ha[s] consistently held that an employer's liability for the criminal acts of its employees is limited to those acts it can reasonably foresee or reasonably should have foreseen. This is because we should not expect employers to assume that their employees will disobey the law." *Id*. at 13.

The central issue in this case is whether Patel knew or should have known, before the sexual assault of Turrentine, that Babu-Rao committed similar conduct in the past and had the propensity to act in accordance with assaultive conduct. Defendants argued that Patel lacked any such knowledge, the sexual assault of Turrentine by Babu-Rao was not foreseeable, and no liability should attach to defendants for the actions of Babu-Rao. We agree.

Defendants offered the deposition testimony of Van Buren Township Detective Michael Long, Babu-Rao, Patel, and Cummings, as well as the police reports and Babu-Rao's employment application, to argue that Patel never knew of Babu-Rao's sexual assault of Cummings before the sexual assault of Turrentine. In this regard, Cummings did not report the incident to management at the Super 8 because she thought Babu-Rao was a manager, and she never met Patel. Cummings called "corporate" and filed a police report against Babu-Rao. Cummings spoke to two maids at the Super 8 the day after the incident, and the maids informed Cummings that similar incidents involving Babu-Rao "happened before." Even if these hearsay statements were admissible, they do not establish that Patel knew about Babu-Rao's earlier sexual assaults. Further, Cummings had no knowledge whether the police spoke to Patel. Patel denied having knowledge from the police or anyone else regarding Babu-Rao's sexual assault of Cummings until after Babu-Rao's arrest. Patel emphasized that it was typical for police to ask for surveillance video, but not usual for police to share details of their investigations.

Plaintiffs offered the deposition testimony of the same witnesses, as well as the deposition testimony of Ronald S. Jihad, to argue, at a minimum, a question of fact existed as to Patel's

knowledge of Babu-Rao's propensity for committing sexual assault.[7]  Jihad testified that when serving plaintiffs' summons and complaint, Patel told him Babu-Rao "had a history" of "immoral sexual advances" when he worked "at a previous hotel."  Jihad did not provide an exact time frame, but stated this conduct occurred "at least 15 years ago" at a "Hampton Hotel."  Although this evidence could establish a question of fact whether Patel knew about a prior incident of sexual assault by Babu-Rao before either incident involving plaintiffs, plaintiffs fail to offer any evidence as to when such knowledge was allegedly obtained.  In other words, it could very well be that Patel did not learn of Babu-Rao's alleged history until after the events at issue in this case.[8]

The record supports that Detective Long visited the Super 8 to investigate the sexual assault of Cummings.  Because Patel was not available, Detective Long "left a message at the front desk for [Patel] to call [him]."  The record also supports that Detective Long spoke to Patel at least twice, after Babu-Rao's sexual assault of Cummings.  Detective Long inquired as to the availability of any surveillance video and Patel provided access to their system.  Of importance, when asked if it was likely Patel "wasn't made aware of the sexual assault complaint made against Babu-Rao" after his conversation with Patel on August 9, 2019, Detective Long answered: "Correct."  After the warrant was issued on September 2, 2019, Detective Long stated: "[Patel] would not have been made aware of the warrant."  Detective Long stated: "I don't think [Patel] was made aware until I think they picked [Babu-Rao] up."  Asked if Patel was "aware of the incident," Detective Long replied: "I have no idea."  Asked if he disclosed to Patel he was "investigating a [CSC] case" when he "went for the video with regard to Ms. Turrentine's case," Detective Long answered: "I don't believe I did."  When asked if he told Patel he was "investigating a [CSC] case" with regard to the incident involving Cummings, Detective Long answered: "I don't believe I did."

Detective Long was asked again if he told Patel there was a warrant for Babu-Rao for either incident.  Detective Long replied: "I don't recall."  Detective Long reiterated he "[did] not think [Patel] became aware of [either incident] maybe until the time of the arrest."  Asked if he advised Patel of either case, Detective Long stated: "I don't recall.  I don't believe so."  Asked if he advised Patel of the complaint made by Cummings on August 8, 2019, as alleged in the complaint, Detective Long replied: "I don't believe I would."  When questioned if he advised Patel about a "warrant out for Babu-Rao's arrest" on August 8, 2019,[9] Detective Long answered: "I don't recall. . . .  I think it depends on the case."  Detective Long stated, however, that he did not discuss the charges with Patel.

When plaintiffs' counsel confusingly asserted to Long, "[y]ou stated earlier that it is likely that [Patel] was aware of the sexual assault of a customer at his hotel," Detective Long replied: "I don't believe I said that."  Plaintiffs' counsel asked Long: "[Y]ou said it's likely that [] Patel was

---

[7] Although this argument is raised only in the context of the assault against Turrentine, it seemingly would apply to the assault against Cummings as well.

[8] In fact, when asked during his deposition whether he "recall[ed] any time frames on Mr. Patel's knowledge of Babu's involvement in sexual criminal assaults on – on women," Jihad replied, "[n]o, I don't have any actual time frame, no."

[9] It is worth noting the subject warrant was not issued until September 2, 2019.

-5-

aware that [Babu-Rao] was arrested for [CSC] after that warrant for his arrest was issued, correct?" Detective Long answered: "I don't recall telling him. I don't know how he would have been made aware of that." Detective Long reiterated that Patel was made aware at the time Babu-Rao was arrested. Asked if he "can be sure" he "did not tell Patel [] there was a warrant out for sexual conduct against Babu-Rao in August of '19," Detective Long replied: "No, I cannot be sure." Detective Long was asked again, using double negatives, by plaintiffs' counsel: "You are not saying that Patel was not aware, correct?" Detective Long replied: "I don't know if he was aware." Plaintiffs' counsel also asked: "[Y]our testimony here today is not that [] Patel didn't know that a warrant was out for [Babu-Rao'] arrest for [CSC], correct?" Detective Long answered: "Correct." Detective Long explained when he spoke to Patel about the surveillance video, the "IT guy Ken Dandy" accompanied him, but Dandy "would not have disclosed" the nature of the investigation to Patel. Plaintiffs' counsel continued to query: "[I]t's not your testimony here today that nobody discussed that to [] Patel, correct?" Detective Long, properly implying his inability to know what any other unspecified individual might have stated to Patel, replied: "Correct." Detective Long was unaware if "anyone" from the police department "made Patel aware in August of 2019 that a criminal sexual attack was made." Even when viewing the admissible evidence in the light most favorable to plaintiffs, there does not exist a question of fact because Detective Long was definitive that he did not make Patel aware of the allegations against Babu-Rao after the sexual assault of Cummings and before the sexual assault of Turrentine. On cross-examination, Detective Long was steadfast in his testimony that he did not recall telling Patel anything about his investigation. At best, Detective Long was not aware if Patel was ever made aware of the allegations, but plaintiffs did not meet their burden of establishing any evidence of Patel's awareness of Babu-Rao's behavior as his employee.

For these reasons, defendants cannot be vicariously liable for the assault and battery against Turrentine because the evidence fails to establish a genuine issue of material fact as to whether Patel was aware of Babu-Rao's assault of Cummings beforehand. Moreover, to the extent that plaintiffs rely on Jihad's testimony indicating that Patel knew that Babu-Rao had committed improper sexual advances about 15 years beforehand at another hotel, the record does not indicate when Patel became aware of that.[10] Thus, Jihad's testimony fails to establish a genuine issue of material fact for vicarious liability regarding the assault against Turrentine. Therefore, defendants are entitled to summary disposition on that assault-and-battery claim.[11]

---

[10] By the same measure, to the extent that plaintiffs rely on the maids' statements indicating that Babu-Rao had previously committed sexual assaults, the record does not establish that Patel had similar knowledge.

[11] While we acknowledge the concurrence's position that Patel could have taken additional investigatory steps that would have led him to discover that the police were investigating Babu-Rao for sexual assault, the law of vicarious liability—as it currently exists—often requires an investigation after, not before, an employer receives notice of alleged wrongful conduct by an employee. Compare *Chambers v Trettco, Inc*, 463 Mich 297, 312; 614 NW2d 910 (2000) ("Under the Michigan Civil Rights Act, an employer may avoid liability in a hostile environment case if it adequately investigated and took prompt and appropriate remedial action upon notice of the

-6-

As to the claims of negligent hiring, negligent retention, and negligent supervision, employers are "subject to liability for their negligence in hiring, training, and supervising their employees." *Zsigo v Hurley Med Ctr*, 475 Mich 215, 227; 716 NW2d 220 (2006). "In order to make out a prima facie case of negligence, the plaintiff must prove the four elements of duty, breach of that duty, causation, and damages." *Brown v Brown*, 478 Mich 545, 552; 739 NW2d 313 (2007). "[T]he gravamen of negligent hiring or retention is that the employer bears some responsibility for bringing an employee into contact with a member of the public despite knowledge that doing so was likely to end poorly." *Mueller v Brannigan Bros Restaurants and Taverns LLC*, 323 Mich App 566, 574; 918 NW2d 545 (2018). "[A] claim of negligent hiring or retention requires actual or constructive knowledge by the employer that would make the *specific* wrongful conduct perpetrated by an employee predictable." *Id*. at 575 (emphasis in original).

Defendants contend that the facts in this case are similar to those in *Brown*, where our Supreme Court held the defendant employer was not liable for its employee's rape because the employee "did not commit prior acts that would have put his employer on notice of [the employee's] propensity to commit rape and [the employee's] workplace speech was not predictive of this criminal act[.]" *Brown*, 478 Mich at 547-548. Specifically, the employee "had no prior criminal record, no history of violent behavior, and certainly no history indicating that he harbored a propensity to commit rape." *Id*. at 547.

In this case, as stated, there is no evidence establishing a factual dispute whether defendants were aware of Babu-Rao's sexual assault of Cummings, or of his other alleged sexual improprieties. Although "[k]nowledge of an employee having actually committed another rape would justify anticipating that the employee would reoffend, if the employer had good reason to know of the prior crime[,]" *Mueller*, 323 Mich App at 575, here there is no evidence to suggest defendants knew about Babu-Rao's sexual assault of Cummings or others before Babu-Rao's sexual assault of Turrentine. Consequently, these additional negligence claims must fail as well.

## III.  CONCLUSION

The trial court incorrectly denied the motion for summary disposition under MCR 2.116(C)(10) as to defendants. We therefore reverse the trial court's order to the contrary and remand to that court for entry of an order summary disposition in favor of defendants. We do not retain jurisdiction.

/s/ Michael J. Riordan
/s/ Mark T. Boonstra

---

alleged hostile work environment.") (cleaned up). In other words, an employer need not investigate or otherwise assume that an employee is engaged in wrongful conduct in the absence of actual or constructive notice of alleged wrongful conduct by that employee. As articulated in this opinion, there is an absence of such actual or constructive notice in the matter before us.